REVACTED

**FILED**

Aug 09 2022

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    s/ElizabethS    DEPUTY

# SEALED

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

July 2021 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. '22 CR1824 JO |
| Plaintiff, | |
| v. | I N D I C T M E N T |
| PETER GRIFFIN (1), | Title 18, U.S.C., Sec. 371 - Conspiracy; Title 18, U.S.C., Sec. 1952(a)(3) - Interstate and Foreign Travel or Transportation in Aid of Racketeering; Title 18, U.S.C., Sec. 1349 - Conspiracy to Commit Wire Fraud; Title 18, U.S.C., Sec. 1343 - Wire Fraud; Title 18, U.S.C., Sec. 1014 - False Statement to a Mortgage Lender; Title 18, U.S.C., Sec. 2 - Aiding and Abetting; Title 18, U.S.C., Sec. 1957 - Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity; Title 21, U.S.C. Sec. 853(p), Title 18, U.S.C., Secs. 982(b), and Title 28, U.S.C., Sec. 2461(c) - Criminal Forfeiture |
| KYUNG SOOK HERNANDEZ (2), aka "Kyungsook Hernandez," aka "Kyung Sook Kim," aka "Kyungsook Kim," aka "Angie," aka "Yumi Kim," | |
| YU HONG TAN (3), aka "Yuhong Tan," aka "Coco," | |
|  | |
| Defendants. | |

The grand jury charges:

## General Allegations

*Introduction - The Network of Illicit Massage Businesses*

At all times material to this Indictment unless otherwise noted:

JSST:nlv:xxxSan Diego:8/9/22

1       1.   Defendants PETER GRIFFIN, KYUNG SOOK HERNANDEZ, aka "Kyungsook

2   Hernandez," aka "Kyung Sook Kim," aka "Kyungsook Kim," aka "Angie,"

3   aka "Yumi Kim," YU HONG TAN, aka "Yuhong Tan," aka "Coco," and ██████

4   ████████████████████████████████████████████████████████████████

5   engaged in conduct relevant to the offenses described herein in the

6   Southern District of California, Central District of California,

7   District of Arizona, and elsewhere.[1]

8       2.   Beginning on a date unknown to the Grand Jury but at least

9   since in or around 2013,[2] the defendants continuously owned, managed,

10   promoted, carried on, and facilitated illicit massage businesses (IMBs),

11   massage parlors and spas that served as fronts for unlawful businesses

12   in which persons promoted and engaged in commercial sex, including the

13   following, collectively referred to as the Griffin IMBs:

14       a. Beginning in at least 2013 and continuing to May 2022,

15          HERNANDEZ owned, and HERNANDEZ and GRIFFIN managed a business

16          called "Genie Oriental Spa" (aka Genie Spa),[3] located at 3395

17          El Cajon Boulevard, San Diego, California 92104;

18       b. Beginning in at least 2014 and continuing to September 2020,

19          GRIFFIN owned, and GRIFFIN and HERNANDEZ managed a business

20          called "Felicita Spa," located at 440 W. Felicita Avenue #106,

21          Escondido, California 92025;

22       c. Beginning in at least 2017 and continuing to the date of the

23          return of the Indictment, GRIFFIN owned, and GRIFFIN and TAN

24          managed a business called "Blue Green Spa" (aka Bonita Spa),

25          located at 3060 Bonita Road #201, Chula Vista, California

26          91910;

---

[1] All subsequent references to the defendants in this Indictment encompass their aliases.
[2] All dates subsequently alleged in this Indictment happened on or about those dates.
[3] All subsequent references to the IMBs in this Indictment encompass their aliases.

d. Beginning in at least 2018 and continuing to February 2021, GRIFFIN owned, and GRIFFIN and ███ managed a business called "Maple Spa," located at 8931 Campo Road, Spring Valley, California 91977; and

e. Beginning in at least 2018 and continuing to February 2020, GRIFFIN owned, and GRIFFIN and ███ managed a business called "Massage W Spa" (aka W Massage Spa), located at 1730 E. Elliot Rd. #16, Tempe, Arizona 85284.

3.    From 1975 through 2002, GRIFFIN worked as a police officer for the San Diego Police Department, including as a detective in the Vice Operations Unit, a unit tasked with enforcing state prostitution laws, including investigating and making arrests associated with IMBs.

4.    After retiring from the police department, GRIFFIN obtained a license to work as a private investigator in California and established a private investigations business called "Griffin PI." GRIFFIN operated the business from his house in San Diego, California, and used a P.O. Box in San Diego (Griffin's P.O. Box) as the business's mailing address.

5.    In connection with Griffin PI, GRIFFIN opened the business bank account ending in 5504 in the name of Peter Griffin Sole Prop dba Griffin PI at Financial Institution-1. In September 2019, GRIFFIN opened a new business bank account ending in 1925 in the name of Peter Griffin dba Griffin PI at Financial Institution-2, which he maintained through the date of the return of the Indictment. GRIFFIN used both Griffin PI accounts in connection with and to further the Griffin IMBs as further described in this Indictment.

6.    The defendants opened, managed, and otherwise used additional bank accounts in connection with the Griffin IMBs, including accounts at Financial Institution-1, Financial Institution-2, Financial

3

1  Institution-3, Financial Institution-4, Financial Institution-5,
2  Financial Institution-6, Financial Institution-7, Financial
3  Institution-8, Financial Institution-9, and Financial Institution-10.

4                    *Relevant State Prostitution Laws*

5        7.   As relevant to this Indictment, the State of California
6  criminalizes the following prostitution offenses: California Penal Code
7  §§ 647(b)(1)-(2) (soliciting or agreeing to engage in prostitution),
8  266h(a) (knowingly living or deriving support from earnings or proceeds
9  of prostitution), 266i(a)(1)-(a)(2) (procuring for, or, by any device
10 or scheme, inducing, persuading, or encouraging a person to commit an
11 act of prostitution), and 266i(a)(3)-(4) (procuring a person a place as
12 an inmate in a house of prostitution, or, by promises or any device or
13 scheme, causing, inducing, persuading, or encouraging an inmate of a
14 house or prostitution to remain an inmate).

15       8.   As relevant to this Indictment, the State of Arizona
16 criminalizes the following prostitution offenses: Arizona Revised
17 Statute §§ 13-3201 (knowingly enticing a person into a house of
18 prostitution), 13-3203 (receiving money or value for procuring or
19 placing a person in a house of prostitution), 13-3204 (receiving money
20 or value from prostitution earnings), 13-3208(a)-(b) (knowingly working
21 at or operating a prostitution enterprise), and 13-3214 (engaging in
22 prostitution).

23               *Facilities of Interstate and Foreign Commerce*

24       9.   The following constitute facilities of interstate and foreign
25 commerce and were used by the defendants to promote, manage, establish,
26 carry on, or otherwise facilitate the business of the Griffin IMBs:

27           a. The Internet, including but not limited to:

28
                                    4

i. Advertisement websites, including Backpage.com, Craigslist.com, and Website-1, where individuals and businesses could post classified-type advertisements.

    1. During at least part of the timeframe alleged in this Indictment, Backpage.com had a variety of classified categories, including an "adult" section where advertisers could post advertisements for "adult jobs," "therapeutic massages," "escorts," and "body rubs." Backpage.com-related websites, including subsidiaries and affiliated companies located outside the United States, were online platforms where individuals and businesses could post similar classified-type advertisements, including advertisements related to commercial sex services and jobs.

    2. As relevant to this Indictment, Craigslist.com was a website where individuals and businesses could post classified-type advertisements, including on classified pages for postings related to "therapeutic services" and other adult services. "Therapeutic services" was a category of postings commonly used to promote commercial sex.

    3. Website-1 hosts classified-type advertisements, business information, and related content developed by third-party users.

ii. Online review websites, including Rubmaps.com, a website where individuals who purchase an account can post, read, and comment on reviews of IMBs and specific employees who

engage in commercial sex at IMBs.  Reviews on Rubmaps.com typically include the address and phone number for the IMB, the date and time the customer visited the IMB, specific information about the IMB employee, payment details, and explicit details concerning the requested and received sex acts.

b. Internet service providers, including Google and United Online (Juno), that provide, among other things, global cloud-based e-mail services, search engines, and translation services.

c. National telephone networks and global communication companies, including Verizon and AT&T.

d. Smartphone applications, including WeChat and Kakao Talk, multi-purpose instant messaging, social media, and mobile payment applications that provide, among other services, text messaging, voice messaging, broadcast messaging, video conferencing, and sharing of photographs, videos, and documents globally.

   i. Kakao Talk is an instant messaging and chat application. Users of Kakao Talk can promote the business of IMBs, including by facilitating communication about jobs at and the management of IMBs.

   ii. WeChat is an instant messaging, chat, and electronic payment application.  Users of WeChat can promote the business of IMBs, including by facilitating communication about jobs at and the management of IMBs.

e. Automated teller machines (ATMs), devices that permit bank-account holders to withdraw or deposit money throughout the country, regardless of where the holder's account is located.

f. Merchant processing services, including those offered through Merchant Processing Company-1, Merchant Processing Company-2, and Merchant Processing Company-3, and credit card processing equipment, including from Credit Card Processor-1 and Credit Card Processor-2, are services and devices that permit businesses and individuals to process debit and credit card payments and receive those payments into bank accounts.

g. Financial institutions, as defined by 18 U.S.C. § 1956(c)(6), including Financial Institution-1, Financial Institution-2, Financial Institution-3, Financial Institution-4, Financial Institution-5, Financial Institution-6, Financial Institution-7, Financial Institution-8, Financial Institution-9, and Financial Institution-10.

h. The mail, which can be used to send and receive correspondence and records associated with the IMBs.

## COUNT 1
### Conspiracy
### (18 U.S.C. § 371)

THE GRAND JURY FURTHER CHARGES THAT:

10. The allegations contained in paragraphs 1 through 9 of the General Allegations are incorporated here by reference.

11. Beginning on a date unknown to the grand jury, but since at least 2013 and continuing to the return of the Indictment, within the Southern District of California, Central District of California, District of Arizona, and elsewhere, defendants PETER GRIFFIN, KYUNG SOOK HERNANDEZ, aka "Kyungsook Hernandez," aka "Kyung Sook Kim," aka "Kyungsook Kim," aka "Angie," aka "Yumi Kim," YU HONG TAN, aka "Yuhong Tan," aka "Coco," and ███████████████

7

1 ████████████████████████████ did knowingly and intentionally
2 combine, conspire, confederate, and agree with each other, and with
3 others known and unknown to the Grand Jury, to commit the following
4 offense against the United States: To use and cause to be used a facility
5 in interstate and foreign commerce, with intent to promote, manage,
6 establish, carry on, and facilitate the promotion, management,
7 establishment, and carrying on of an unlawful activity, that is, a
8 business enterprise involving prostitution, in violation of the laws of
9 the State of California and the State of Arizona, and thereafter
10 performed and attempted to perform an act to promote, manage, establish,
11 carry on, and facilitate the promotion, management, establishment and
12 carrying on of such unlawful activity, in violation of 18 U.S.C. §
13 1952(a)(3).

14 **Manner and Means of the Conspiracy**

15 It was a part of the conspiracy that, in the Southern District of
16 California, Central District of California, District of Arizona, and
17 elsewhere:

18   12.   Members of the conspiracy established, owned, and managed
19 business enterprises involving prostitution, including Felicita Spa,
20 Genie Oriental Spa, Blue Green Spa, Maple Spa, and Massage W Spa,
21 purporting to be legitimate massage parlors.

22   13.   Members of the conspiracy communicated with each other, and
23 others known and unknown to the Grand Jury, in efforts to avoid law
24 enforcement detection and profit from the operation of the Griffin IMBs.

25   14.   Members of the conspiracy leased commercial properties and
26 paid for the utilities and Internet connectivity at those properties for
27 the purposes of facilitating and promoting the Griffin IMBs.

28

15.   Members of the conspiracy used cellular telephones and smartphone applications like WeChat and Kakao Talk to participate in messaging groups, post online job advertisements, and hire women to work at the Griffin IMBs.

16.   Members of the conspiracy leased apartments and used residences they owned for the purpose of housing employees of the Griffin IMBs.

17.   Members of the conspiracy used the Internet, including Backpage.com, Craigslist.com, and Website-1, among other websites, as well as Website-1's print publication magazine, to pay for, post, and cause to be posted advertisements to facilitate and promote the business of the Griffin IMBs.

18.   Members of the conspiracy paid for and monitored online review websites, including Rubmaps.com, and printed and discussed reviews from those websites with other members of the conspiracy and with employees to promote and facilitate the business of the Griffin IMBs.   GRIFFIN used the Rubmaps.com account to access online reviews posted by customers of the Griffin IMBs and other suspected IMBs.   Reviews for each of the Griffin IMBs included explicit details of commercial sex acts performed at the Griffin IMBs, as well as how much the customers paid for the sex acts.   GRIFFIN kept printed Rubmaps.com reviews, showing his account name "griffinpi," at his house and in his truck, and distributed printed Rubmaps.com reviews to other members of the conspiracy.

19.   Members of the conspiracy used the Internet, including through Internet service providers Google and United Online (Juno); cellular telephones, including those serviced by Verizon and AT&T; e-mail; and smartphone applications like WeChat and Kakao Talk to communicate with each other, with employees of the Griffin IMBs, with Griffin IMB

1  customers and prospective customers, and with others, to manage,
2  promote, carry on, and facilitate the business of the Griffin IMBs.

3      20.    Members of the conspiracy used cellular telephones, smartphone
4  applications, and e-mail accounts to promote, carry on, and facilitate
5  the business of the Griffin IMBs by, among other things, communicating
6  with members of the conspiracy and individuals associated with other
7  suspected IMBs about law enforcement activity, the recruiting, hiring,
8  and management of employees, commercial sex, and IMB customers;
9  receiving and paying bills for advertisements, utilities, rent, and
10 other services related to the Griffin IMBs and related residential
11 properties; communicating directly with IMB customers and prospective
12 customers; and managing finances associated with the Griffin IMBs:

13          a. GRIFFIN used the e-mail account, griffinpi@xxxx.com,
14             subscribed to GRIFFIN and associated with Griffin PI, to
15             promote, manage, and facilitate the Griffin IMBs, which were
16             engaged in commercial sex.

17          b. GRIFFIN and HERNANDEZ used the e-mail account,
18             felicitaspaescondido@xxxx.com, subscribed to GRIFFIN and
19             backed up to GRIFFIN's e-mail account, griffinpi@xxxx.com, to
20             promote, manage, and facilitate the business of Felicita Spa,
21             which was engaged in commercial sex.

22          c. HERNANDEZ used the e-mail account,
23             kyungsookhernandez@xxxx.com, subscribed to HERNANDEZ, to
24             promote, manage, and facilitate the business of Felicita Spa
25             and Genie Oriental Spa, which were engaged in commercial sex.

26          d. GRIFFIN and TAN used the e-mail account, bgspa.llc@xxxx.com,
27             subscribed to TAN and backed up to GRIFFIN's e-mail account,
28             griffinpi@xxxx.com, to promote, manage, and facilitate the

1    business of Blue Green Spa, which was engaged in commercial
2    sex.

3    e. ███ used the e-mail account, ████████████ subscribed to
4    ███ to promote, manage, and facilitate the business of Maple
5    Spa and Massage W Spa, which were engaged in commercial sex.

6    f. GRIFFIN used the phone number ending in 1793, serviced by
7    Verizon, and subscribed to GRIFFIN, to promote, manage, and
8    facilitate the Griffin IMBs, which were engaged in commercial
9    sex.

10   g. HERNANDEZ used the phone number ending in 6385, serviced by
11   Verizon, and subscribed to HERNANDEZ, to promote, manage, and
12   facilitate the business of Felicita Spa and Genie Oriental
13   Spa, which were engaged in commercial sex.

14   h. GRIFFIN and TAN used the phone number ending in 1162, serviced
15   by Verizon, and subscribed to GRIFFIN, to promote, manage, and
16   facilitate the business of Blue Green Spa, which was engaged
17   in commercial sex.

18   i. Members of the conspiracy at Maple Spa used the phone number
19   ending in 2491, subscribed to GRIFFIN, to promote and
20   facilitate the business of Maple Spa, which was engaged in
21   commercial sex.

22   j. ███ used the phone number ending in 8988, subscribed to ███
23   to promote, manage, and facilitate the business of Maple Spa
24   and Massage W Spa, which were engaged in commercial sex.

25       21. Members of the conspiracy charged customers "house fees,"
26   initial fees paid to IMBs, which enabled customers to meet with a
27   "masseuse," and customers paid "tips" in exchange for commercial sex
28   acts they engaged in with IMB employees.   Members of the conspiracy

11

applied for, used, and caused others to use credit card processing equipment and merchant services processing to process and collect Griffin IMB customers' credit and debit card payments related to the "house fees" and "tips."

22. Members of the conspiracy accepted cash from Griffin IMB customers, and a member or members of the conspiracy arranged for an ATM to be installed at Maple Spa.

23. Members of the conspiracy used and instructed others to use financial institutions to deposit proceeds derived from the Griffin IMBs into bank accounts controlled by the defendants.

24. Members of the conspiracy created and instructed Griffin IMB employees to maintain ledgers tracking money owed to the Griffin IMB, i.e., "the house," and money paid to the IMB employees.

25. Members of the conspiracy created and maintained records related to Griffin IMB customers to promote and carry on the business.

26. Members of the conspiracy responded to "Requests for Transaction Documentation" or "dispute notifications" from merchant services companies regarding disputed credit or debit card transactions at the Griffin IMBs.

27. Members of the conspiracy used Griffin IMB-related bank accounts, including accounts associated with Griffin PI, and online banking services to hold and transfer proceeds between the Griffin IMBs and to facilitate, carry on, and promote the business enterprises involving prostitution by paying for rent, utilities, Internet connectivity, telephone services, and supplies for the Griffin IMBs and related residential properties where IMB employees lived.

1    28.   Members of the conspiracy used the mail to promote the business

2    of the Griffin IMBs, including by sending checks to pay for rent at the

3    Griffin IMBs and related residential properties.

4    **Overt Acts**

5    29.   In furtherance of the conspiracy, and to accomplish the object

6    of the conspiracy, one or more members of the conspiracy committed the

7    following overt acts in the Southern District of California, Central

8    District of California, District of Arizona, and elsewhere.

9    30.   On the dates below, the defendants established the Griffin

10   IMBs by signing Fictitious Business Name Statements (FBNS), registering

11   trade names, and applying for permits in California and Arizona:

12         a.  On October 14, 2013, HERNANDEZ signed a FBNS for "Genie

13             Oriental Spa," and listed Griffin's P.O. Box as the business's

14             mailing address.

15         b. On April 19, 2017, GRIFFIN signed a FBNS for "Blue Green Spa,"

16             and listed Griffin's P.O. Box as the business's return

17             address.

18         c. Between January 10, 2018, and January 31, 2018, GRIFFIN

19             registered the trade name "W Massage Spa," and applied for a

20             use permit transfer for W Massage Spa through the City of

21             Tempe Community Development Department.

22         d. On March 26, 2018, GRIFFIN filed a FBNS for "Maple Spa."

23         e. On September 20, 2019, GRIFFIN filed a FBNS for "Felicita

24             Spa," and indicated he had been operating the business since

25             August 10, 2014.

26         f. On February 11, 2020, GRIFFIN completed and signed, as "Peter

27             Griffin/Owner," a Plan Check Application for the County of San

28             Diego Department of Environmental Health, Food, and Housing

Division for Genie Spa, on which he checked the box for "consult-new/change of owner" and listed himself as the business owner.

31.  On the dates below, the defendants entered into and assumed leases for commercial properties located in California and Arizona, from which they operated the Griffin IMBs and promoted, facilitated, and carried on business enterprises involving prostitution:

    a. On May 16, 2014, ███ entered into a lease agreement for the Maple Spa property.

    b. On November 18, 2016, GRIFFIN and HERNANDEZ entered into a lease agreement for the Genie Oriental Spa property.

    c. On March 29, 2017, GRIFFIN and HERNANDEZ entered an agreement to extend the lease for the Felicita Spa property.

    d. On April 17, 2017, GRIFFIN and TAN entered into an agreement to assume the lease for the Blue Green Spa property.

    e. On December 11, 2017, ███ entered into an agreement to lease the Massage W Spa property.

    f. On May 7, 2018, ███ entered into an agreement to extend the lease for the Maple Spa property through May 31, 2023.

32.  On the dates below, the defendants opened bank accounts, which they, and others known and unknown to the Grand Jury, used, along with online banking services, to pay for rent, utilities, supplies, and maintenance at the Griffin IMBs and related residential properties, where IMB employees lived, and to receive, transfer between and among accounts they controlled, and spend or withdraw proceeds of the Griffin IMBs, which facilitated the business of the Griffin IMBs.

    a. On August 1, 2011, ███ opened the account ending in 5333 in the name of ███ at Financial Institution-1.

14

b. On October 4, 2013, HERNANDEZ opened the account ending in 9021 in the name of Kyungsook Hernandez at Financial Institution-1.

c. On November 4, 2013, HERNANDEZ opened the account ending in 4498 in the name of Kyungsook Hernandez Sole Prop dba Genie Oriental Spa at Financial Institution-1, for which GRIFFIN maintained records and prepared checks.

d. On March 4, 2014, HERNANDEZ opened the account ending in 3333 in the name of Kyungsook Hernandez dba Genie Oriental Spa at Financial Institution-1.

e. In May 2014, HERNANDEZ opened the account ending in 0471 in the name of Kyungsook Hernandez at Financial Institution-5.

f. On August 13, 2014, ▮▮▮▮ opened the account ending in 5037 in the name of ▮▮▮▮▮▮▮▮▮ Sole Prop dba Maple Spa at Financial Institution-1.

g. In November and December 2014, ▮▮▮▮ opened the account ending in 2791 in the name of ▮▮▮▮▮▮▮▮ dba Maple Spa and the account ending in 7838 in the name of Maple Spa Inc. at Financial Institution-3.

h. On January 25, 2015, GRIFFIN opened the account ending in 0590 in the name of Peter Griffin dba Felicita Spa at Financial Institution-1, and GRIFFIN and HERNANDEZ made HERNANDEZ a signatory on that account.

i. In September 2015, GRIFFIN opened the account ending in 1001 in the name of Peter Griffin at Financial Institution-7.

j. On May 24, 2016, TAN opened the account ending in 2274 in the name of Yuhong Tan at Financial Institution-1.

k. On August 2, 2016, ██████ opened the account ending in 3893 in the name of ██████████ at Financial Institution-4.

l. On April 19, 2017, GRIFFIN opened the account ending in 7163, in the name of Peter Griffin Sole Prop dba Blue Green Spa at Financial Institution-1, and GRIFFIN and TAN made TAN a signatory on that account.

m. On January 1, 2018, GRIFFIN opened the account ending in 7355 in the name of Peter Griffin dba W Massage Spa at Financial Institution-6.

n. On January 29, 2018, ██████ opened the account ending in 1534 in the name of ██████████ at Financial Institution-8.

o. On March 30, 2018, GRIFFIN opened the account ending in 7470 in the name of Peter Griffin Sole Prop dba Maple Spa at Financial Institution-1.

p. On September 11, 2019, GRIFFIN opened the account ending in 1017 in the name of Griffin dba Blue Green Spa at Financial Institution-2, and GRIFFIN and TAN made TAN a signatory on that account.

q. On September 20, 2019, GRIFFIN opened the account ending in 6712 in the name of Peter Griffin dba Felicita Spa and the account ending in 0631 in the name of Peter Griffin dba Maple Spa at Financial Institution-2.

33. Beginning on and after the dates below, GRIFFIN, TAN, and others known and unknown to the Grand Jury leased, paid for, and used the following residential properties as housing for women who worked at Blue Green Spa:

a. On May 2, 2017, TAN entered into an agreement to lease an apartment in Chula Vista, California. GRIFFIN and TAN caused

1  GRIFFIN to be listed as the co-lessee and occupant of that
2  apartment.

   b. On July 3, 2017, GRIFFIN co-signed an agreement on behalf of
     three individuals, two of which he claimed worked at Blue
     Green Spa as "independent contractors," to lease a second
     apartment located in Chula Vista, California.

   c. On December 10, 2018, GRIFFIN and TAN entered into an agreement
     to lease a third apartment in Chula Vista, California.

   d. In April and May of 2019, TAN, with GRIFFIN's help, as further
     described in Counts Sixteen through Eighteen, purchased a
     residential property in Bonita, California.

34.  GRIFFIN and TAN charged women living at the apartments and TAN's Bonita, California house rent and received payments from the women, which included proceeds of commercial sex occurring at Blue Green Spa.

35.  On December 21, 2018, GRIFFIN and ███ entered into an agreement to lease an apartment in Tempe, Arizona, which GRIFFIN, ███ and others known and unknown to the Grand Jury, paid for and used as housing for women who worked at Massage W Spa.  GRIFFIN made electronic rent payments and sent payments through the mail from California to Arizona for that apartment.

36.  On the dates below, the defendants entered into agreements for merchant processing services and to lease credit card processing equipment, which members of the conspiracy used and instructed and caused others to use to process customers' credit and debit card payments at the Griffin IMBs:

   a. On November 6, 2013, HERNANDEZ entered into a merchant
     services agreement with Merchant Services Company-1 to lease
     credit card processing equipment and obtain merchant

processing for Genie Oriental Spa. Later, on March 14, 2018, GRIFFIN received an e-mail from Credit Card Processor-1 confirming a credit card processing device was shipped to HERNANDEZ at Genie Oriental Spa.

b. On January 26, 2015, GRIFFIN entered into a merchant services agreement with Merchant Services Company-1 to lease credit card processing equipment and obtain merchant processing for Felicita Spa.

c. On April 19, 2017, GRIFFIN entered into a merchant services agreement with Merchant Processing Company-1 to lease credit card processing equipment and obtain merchant processing for Blue Green Spa, which he claimed was a nail salon.

d. On January 31, 2018, GRIFFIN entered into a merchant processing agreement with Merchant Processing Company-3 to lease, through Credit Card Processor-2, credit card processing equipment and obtain merchant processing for Massage W Spa, which he claimed offered "Foot Massage Reflexology."

e. On April 7, 2018, GRIFFIN entered into a merchant services agreement with Merchant Processing Company-1, to lease credit card processing equipment and obtain merchant processing for Maple Spa.

f. On May 7, 2018, GRIFFIN signed an agreement with Credit Card Processor-1 to obtain a new credit card processing device for Felicita Spa.

g. On October 3, 2019, GRIFFIN entered an agreement for a new merchant services account for Blue Green Spa with Merchant Processing Company-2, a Texas company that provided merchant processing services for Financial Institution-9.

37.   In 2017, a member or members of conspiracy created a document, which included pictures of a Credit Card Processor-1 device and instructions in Mandarin on how to use the credit card processing device at Blue Green Spa.   The document included an instruction for Blue Green Spa employees to check the name on the customer's credit card to make sure it was not a customer's wife's credit card.

38.   Members of the conspiracy paid for, edited, discussed, monitored, and caused to be posted online and print advertisements facilitating and promoting the business of the Griffin IMBs, including advertisements for Felicita Spa and Genie Oriental Spa on Backpage.com, Backpage related websites, Website-1, and Website-1's print publication magazine, and advertisements for Blue Green Spa on Backpage.com and Craigslist.com.

39.   Beginning in at least 2014 and continuing through at least 2020, GRIFFIN paid for a Rubmaps.com account, including using his Griffin PI business account ending at 5504 at Financial Institution-1.

All in violation of Title 18, United States Code, Section 371.

### COUNTS 2 - 15
**Use of Interstate Facilities to Promote, Manage, Establish, Carry On, or Facilitate a Racketeering Enterprise**
**(18 U.S.C. §§ 1952 and 2)**

THE GRAND JURY FURTHER CHARGES THAT:

40.   The allegations contained in paragraphs 1 through 9 of the General Allegations are incorporated here by reference.

41.   On the dates set forth below, in the Southern District of California, the defendants in each count below did knowingly use and cause to be used a facility in interstate and foreign commerce, as specified in each count, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and

19

carrying on of unlawful activity, that is, business enterprises
involving prostitution, in violation of the laws of the State of
California and the State of Arizona, and thereafter performed and
attempted to perform an act to promote, manage, establish, carry on, and
facilitate the promotion, management, establishment, and carrying on of
such unlawful activity:

| Count | Defendant(s) | Use Of Facility |
|---|---|---|
| 2 | YU HONG TAN | On January 2, 2018, TAN used the Internet to make payments to Craigslist.com for online advertisements for Blue Green Spa. |
| 3 | PETER GRIFFIN | On February 6, 2018, GRIFFIN, using a check, paid the City of Tempe in Arizona for a permit for Massage W Spa. |
| 4 | KYUNG SOOK HERNANDEZ | On February 6, 2018, HERNANDEZ used the Internet to pay PostZone24.com for online advertisements for Felicita Spa. |
| 5 | PETER GRIFFIN | On February 14, 2018, GRIFFIN used the Internet to pay Miracomm R-Maps, the business that operates Rubmaps.com, in relation to his Rubmaps.com account. |
| 6 | PETER GRIFFIN | On March 11, 2018, GRIFFIN, using a check, paid Posting Solutions for online advertisements for Blue Green Spa on Backpage.com. |
| 7 | PETER GRIFFIN and KYUNG SOOK HERNANDEZ | Between December 6, 2018, and December 8, 2018, using cellular telephones, and specifically the smartphone application Kakao Talk, GRIFFIN and HERNANDEZ exchanged messages about law enforcement activity and spa advertising. |

| 8 | PETER GRIFFIN | On May 1, 2019, using a cellular telephone, and specifically the smartphone application Kakao Talk, GRIFFIN sent HERNANDEZ a message warning her of potential law enforcement activity at Felicita Spa. |
|---|---|---|
| 9 | YU HONG TAN | On June 1, 2019, using a cellular telephone, TAN sent a message to a group of individuals to advertise for Blue Green Spa. |
| 10 | PETER GRIFFIN and YU HONG TAN | Between June 24, 2019, and June 25, 2019, using cellular telephones, and specifically the smartphone application WeChat, GRIFFIN and TAN discussed online reviews for Blue Green Spa. |
| 11 | PETER GRIFFIN and KYUNG SOOK HERNANDEZ | Between February 6, 2020, and February 13, 2020, using cellular telephones, and specifically the smartphone application Kakao Talk, GRIFFIN and HERNANDEZ exchanged messages about an upcoming regulatory inspection at Felicita Spa. |
| 12 | PETER GRIFFIN | On February 17, 2020, using the Internet, GRIFFIN subscribed for a RubMaps account. |
| 13 | PETER GRIFFIN and ▮▮▮▮ | On August 15, 2020, using cellular telephones, GRIFFIN and ▮▮ discussed Rubmaps.com reviews for Maple Spa. |
| 14 | YU HONG TAN | On September 2, 2020, using a cellular telephone, TAN messaged a Blue Green Spa customer to discuss the commercial sex act he engaged in with a Blue Green Spa employee. |

| 15 | | | Between September 4, 2020, and September 5, 2020, ███ used a cellular telephone to facilitate meeting with the landlord of Maple Spa. |

All in violation of Title 18, United States Code, Sections 1952(a)(3) and 2.

## COUNT 16
### Conspiracy to Commit Wire Fraud
### (18 U.S.C. § 1349)

THE GRAND JURY FURTHER CHARGES THAT:

42.  The allegations contained in paragraphs 1 through 9 of the General Allegations are incorporated here by reference.

43.  Beginning in April 2019, and continuing through May 2019, in the Southern District of California, the Central District of California, and elsewhere, defendants PETER GRIFFIN and YU HONG TAN, aka "Yuhong Tan," aka "Coco," together with each other and other persons known and unknown to the Grand Jury, knowingly and intentionally combined, conspired, confederated, and agreed to violate 18 U.S.C. § 1343, that is, to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and to transmit and to cause to be transmitted by means of wire communication in interstate commerce, a writing, sign, signal, picture, and sound, affecting a financial institution, for the purpose of executing such scheme and artifice.

**Manner and Means of the Conspiracy**

It was a part of the conspiracy that:

44.  GRIFFIN and TAN prepared, and caused to be prepared, including through e-mail communications and the Internet, a materially false mortgage loan application and supporting documentation, with intent to defraud the lender, Mortgage Lender-1, a California corporation licensed

as a mortgage lender and located in Los Angeles, California, through Mortgage Loan Service Company-1, a mortgage broker located in Irvine, California.   GRIFFIN and TAN knew that the loan application and supporting documentation contained materially false information about the source of $165,000 to be applied toward the purchase of the property. GRIFFIN and TAN falsely represented to Mortgage Loan Service Company-1 and thereby to Mortgage Lender-1, that the $165,000 was a gift from GRIFFIN to TAN, when, as GRIFFIN and TAN well knew, the funds were, in fact, composed of money derived from international wire transfers from individuals in China, domestic wire transfers, and proceeds from Blue Green Spa, a business enterprise involving prostitution.

45.   GRIFFIN and TAN submitted and caused to be submitted the materially false loan application and supporting documentation to Mortgage Loan Service Company-1 to obtain approval for the loan sought from Mortgage Lender-1.

46.   By submitting, and causing to be submitted, the materially false loan application and supporting documents, GRIFFIN and TAN caused Financial Institution-1's bank, located in New York, to wire $165,000 on May 7, 2019, to Financial Institution-10, located in California, to be held in an escrow account managed by Escrow Corporation-1 for the purchase of the property located at in Bonita, California.   In this way, GRIFFIN and TAN caused Mortgage Lender-1 to fund a mortgage loan in the amount of approximately $402,500, for the same property, which closed on May 29, 2019.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 17
### Wire Fraud
#### (18 U.S.C. §§ 1343 and 2)

THE GRAND JURY FURTHER CHARGES THAT:

23

47.  The allegations contained in paragraphs 1 through 9 of the General Allegations are incorporated here by reference.

48.  On the date set forth below, in the Southern District of California, defendant PETER GRIFFIN, having knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the scheme and artifice to defraud, knowingly transmitted and caused to be transmitted by means of wire communications in interstate commerce, certain writings, signs, signals, and sounds, affecting a financial institution, specifically:

| Date | Use of Interstate Wire |
|------|------------------------|
| May 7, 2019 | $165,000, drawn from Griffin's account ending in 5504 at Financial Institution-1, wired from Financial Institution-1's bank located in New York to Financial Institution-10's bank located in California for the benefit of the escrow account ending in 00192954, held by Escrow Corporation-1. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

### COUNT 18
### False Statement to Mortgage Lender
### (18 U.S.C. §§ 1014 and 2)

THE GRAND JURY FURTHER CHARGES THAT:

49.  The allegations contained in paragraphs 1 through 9 of the General Allegations and in paragraphs 44 through 46 of Count Sixteen are incorporated here by reference.

50.  On or before May 29, 2019, in the Southern District of California, defendants PETER GRIFFIN and YU HONG TAN, aka "Yuhong Tan," aka "Coco," knowingly made a false statement for the purpose of influencing the action of Mortgage Lender-1, a mortgage lending

24

business, upon an application, purchase, and loan, by causing to be submitted to Mortgage Lender-1, documents falsely representing that GRIFFIN gifted $165,000 to TAN for the purchase of property when, as the defendants knew, not all the money was a gift from GRIFFIN.

All in violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT 19
### Monetary Transaction in Criminally Derived Property
### (18 U.S.C. § 1957)

THE GRAND JURY FURTHER CHARGES THAT:

51.    The allegations contained in paragraphs 1 through 9 of the General Allegations and Count 1 of this Indictment are incorporated here by reference.

52.    On September 10, 2018, in the Southern District of California, defendant PETER GRIFFIN, knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000, namely, the purchase, in and affecting interstate commerce, of a watch for $11,900 from Jeweler-1, using funds drawn from GRIFFIN's account ending in 7163 and held in the name of Griffin dba Blue Green Spa at Financial Institution-1, which funds were derived from specified unlawful activity, namely, interstate and foreign travel or transportation in aid of racketeering, in violation of 18 U.S.C. § 1952(a)(3), and which funds GRIFFIN then knew to involve criminally derived property.

All in violation of Title 18, United States Code, Section 1957.

## COUNT 20
### Monetary Transaction in Criminally Derived Property
### (18 U.S.C. § 1957)

THE GRAND JURY FURTHER CHARGES THAT:

53.   The allegations contained in paragraphs 1 through 9 of the General Allegations and Count One of this Indictment are incorporated here by reference.

54.   On April 6, 2019, in the Southern District of California, defendant PETER GRIFFIN, knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000, namely, the purchase of a cashier's check, in and affecting interstate commerce, in the amount of $25,000 using funds drawn from GRIFFIN's account ending in 7163 and held in the name of Griffin dba Blue Green Spa at Financial Institution-1, which funds were derived from specified unlawful activity, namely, interstate and foreign travel or transportation in aid of racketeering, in violation of 18 U.S.C. § 1952(a)(3), and which funds GRIFFIN then knew to involve criminally derived property.

All in violation of Title 18, United States Code, Section 1957.

## COUNT 21
### Monetary Transaction in Criminally Derived Property
### (18 U.S.C. § 1957)

THE GRAND JURY FURTHER CHARGES THAT:

55.   The allegations contained in paragraphs 1 through 9 of the General Allegations and Count 1 of this Indictment are incorporated here by reference.

56.   On April 8, 2019, in the Southern District of California, defendant YU HONG TAN, aka "Yuhong Tan," aka "Coco," knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000, namely, the deposit of a cashier's check, in and affecting interstate commerce, in the amount of $25,000 into TAN's account ending in 2274 at Financial Institution-1, which cashier's check was purchased with funds derived from specified unlawful activity, namely, interstate and foreign travel or transportation in aid of

racketeering, in violation of 18 U.S.C. § 1952(a)(3), and which funds
TAN then knew to involve criminally derived property.

All in violation of Title 18, United States Code, Section 1957.

### COUNT 22
### Monetary Transaction in Criminally Derived Property
### (18 U.S.C. § 1957)

THE GRAND JURY FURTHER CHARGES THAT:

57.   The allegations contained in paragraphs 1 through 9 of the
General Allegations and Count One of this Indictment are incorporated
here by reference.

58.   On September 7, 2019, in the Southern District of California,
defendant PETER GRIFFIN, knowingly engaged in a monetary transaction in
criminally derived property of a value greater than $10,000, namely, the
transfer in and affecting interstate commerce of $15,109 in funds from
GRIFFIN's account ending in 7163 and held in the name of Griffin dba
Blue Green Spa at Financial Institution-1, via a check to Car Financing
Company-1 for account XXXX1011, which funds were derived from specified
unlawful   activity,   namely,   interstate   and   foreign   travel   or
transportation   in   aid   of   racketeering,   in   violation   of   18   U.S.C.
§ 1952(a)(3), and which funds GRIFFIN then knew to involve criminally
derived property.

All in violation of Title 18, United States Code, Section 1957.

### FORFEITURE ALLEGATIONS

59.   The allegations contained in paragraphs 1 through 58 above are
realleged herein for purposes of alleging forfeiture to the United States
pursuant   to   Title   18,   United   States   Code,   Sections   981(a)(1)(C),
982(a)(1),   and   982(a)(2),   and   Title   28,   United   States   Code,
Section 2461(c).

1  60.   Upon conviction of one and more of the offenses in violation

2  of Title 18, United States Code, Sections 371 and 1952, alleged in

3  Counts 1 through 15, defendants PETER GRIFFIN, KYUNG SOOK HERNANDEZ,

4  aka "Kyungsook Hernandez," aka "Kyung Sook Kim," aka "Kyungsook Kim,"

5  aka "Angie," aka "Yumi Kim," YU HONG TAN, aka "Yuhong Tan," aka "Coco,"

6  and █████████████████████████████████████████████████

7  ████████████   shall forfeit to the United States, pursuant to Title 18,

8  United States Code, Section 981(a)(1)(C) and Title 28, United States

9  Code, Section 2461(c), any property, real and personal, which

10  constitutes and is derived from proceeds traceable to such offenses.

11  The property to be forfeited includes, but is not limited to:

12

13  a.   $6,997.00 in U.S. currency seized from Maple Spa, located
     at 8931 Campo Road, Spring Valley, California on

14  September 23, 2020;

15  b.   $7,200.00 in U.S. currency seized from ███████residence
     located at 5148 Fino Drive, San Diego, California on

16  September 23, 2020; and

17

18  c.   $38,109.00 in U.S. currency seized from TAN's residence,
     located at 2915 Bonita Mesa Road, Bonita, California, on

19  September 23, 2020.

20  61.   Upon conviction of one and more of the offenses in violation

21  of Title 18, United States Code, Sections 1014, 1343, and 1349, alleged

22  in Counts 16 through 18, defendants PETER GRIFFIN and YU HONG TAN,

23  aka "Yuhong Tan," aka "Coco," shall forfeit to the United States,

24  pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and

25  982(a)(2)(A), and Title 28, United States Code, Section 2461(c), any

26  property, real and personal, which constitutes and is derived from

27  proceeds traceable to such offenses. The property to be forfeited

28  includes, but is not limited to:

a.  Up to $269,000 from TAN's account at Financial Institution-1 ending in 2274; and

b.  Up to $10,000 from GRIFFIN's account at Financial Institution-2 ending in 1925.

62.  Upon conviction of one and more of the offenses in violation of Title 18, United States Code, Section 1957, alleged in Counts 19 through 22, defendants PETER GRIFFIN and YU HONG TAN, aka "Yuhong Tan," aka "Coco," shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real and personal, involved in such offenses, and any property traceable to such property. The property to be forfeited includes, but is not limited to:

a.  One Cartier Ballon Bleu 33mm ss/18 Reg DIA Bezel DIA Watch Marked 3753110450UX/WE902077; and

b.  One Red 2017 Honda Accord Sport, VIN #1HGCR2F52HA027726.

63.  If any of the property described above, as a result of any act or omission of the defendants:

a. Cannot be located upon the exercise of due diligence;

b. Has been transferred or sold to, or deposited with, a third party;

c. Has been placed beyond the jurisdiction of the court;

d. Has been substantially diminished in value; or

e. Has been commingled with other property which cannot be divided without difficulty,

//

//

//

//

//

1  the United States of America shall be entitled to forfeiture of

2  substitute property pursuant to Title 21, United States Code,

3  Section 853(p), as incorporated by Title 18, United States Code,

4  Section 982(b) and Title 28, United States Code, Section 2461(c).

5      DATED: August 9, 2022.

6

7                        A TRUE BILL:

8                        Foreperson

9  RANDY S. GROSSMAN
   United States Attorney

10

11 By:

12     JILL S. STREJA
    Assistant United States Attorney

13     Southern District of California
    LEAH L. BRANCH

14     Trial Attorney, Human Trafficking Prosecution Unit
    CAYLEE E. CAMPBELL

15     Trial Attorney, Money Laundering and Asset Recovery Section

16

17

18                      8/10/2022
I hereby attest and certify on _____

19 That the foregoing document is a full, true and correct
copy of the original on file in my office and in my legal

20 custody.
             CLERK, U.S. DISTRICT COURT

21           SOUTHERN DISTRICT OF CALIFORNIA

22 By_____

23

24

25

26

27

28

                30